ROBERT E. BORMES and PATRICIA A. BORMES, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Bormes v. Commissioner
Docket Nos. 7304-70 - 7308-70.
United States Tax Court
T.C. Memo 1974-65; 1974 Tax Ct. Memo LEXIS 254; 33 T.C.M. (CCH) 314; T.C.M. (RIA) 74065; March 18, 1974, Filed. Merrill R. Talpers, for the petitioners in docket Nos. 7304-70 and 7305-70. Dennis Maloney, for the petitioners in docket Nos. 7306-70, 7307-70 and 7308-70. *255 Robert F. Cunningham, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The respondent determined deficiencies in the Federal income taxes and additions to tax of petitioners as follows: Petitioner
Year
Tax
Addition to Tax Sec. 6651(a) Robert E. Bormes, et ux
1965
$6,290.96
$1,572.74
(docket No. 7304-70)
1966
1,902.49
-0-
William A. Bormes, et ux
1965
1,026.00
256.60
(docket No. 7305-70)
1966
2,309.56
115.48
Dennis Maloney, et ux
1965
862.42
-0-
(docket No. 7306-70)
1966
195.96
-0-
Bernard C. Gerber, et ux
1965
2,486.25
-0-
(docket No. 7307-70)
1966
607.42
-0-
Richard L. Kolker, et ux
1965
97.80
-0-
(docket No. 7308-70)
1966
248.70
-0-
As a result of concessions made by both the respondent and petitioners, the sole issue remaining for decision is the valuation of 8.5 acres contributed by the petitioners as members of a partnership to Dakota Midland Hospital in 1965 and 12 acres so contributed in 1966. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated herein. All of the petitioners resided in Aberdeen, *256 South Dakota, at the time of filing their petitions herein. Their joint Federal income tax returns for the taxable years 1965 and 1966 were filed with the district director of internal revenue at Aberdeen, South Dakota. The tax returns filed by the petitioners in docket Nos. 7304-70 and 7305-70 were filed after their due dates. On June 5, 1968, Petitioners Robert E. Bormes and Patricia A. Bormes (docket No. 7304-70) filed amended returns for the taxable years 1965 and 1966 with the district director of internal revenue at Aberdeen, South Dakota. During the years in issue and at all times material herein, petitioners were partners in Wylie Land Agency (Wylie Land), a partnership which was engaged in the business of land investment, land development and the sale of real estate lots in and around Aberdeen, South Dakota. Wylie Land filed partnership information returns for the calendar years 1965 and 1966 and amended information returns for the same years, with the district director of internal revenue at Aberdeen, South Dakota. During the taxable years involved, the partners of Wylie Land and their respective interests were as follows: Partner
Partnership Interest Robert E. Bormes
25.0%
William A. Bormes
12.5
Dennis Maloney
12.5
Bernard C. Gerber
12.5
Richard L. Kolker
12.5
Noel C. DeDianous
12.5
Roger A. Standard
12.5
*257 Petitioner Robert E. Bormes is a board-certified surgeon. He moved to Aberdeen, South Dakota, in 1959, and has been engaged in the practice of medicine there since that time. In 1964 and 1965, he served as president of the medical staff of St. Luke's Hospital, Aberdeen's only hospital at that time. The hospital was owned and operated by the sisters of the Presentation Order. As a specialty-oriented physician, he set out to departmentalize the hospital according to the general medical specialties and to enact new bylaws for the hospital. Because he was largely unsuccessful in attempting to alter the organizational structure of the hospital and to modernize its facilities, he concluded in April 1965 that a second hospital should be constructed in the community in order to improve the hospital facilities available in Aberdeen. After being informed that the Presentation Order would not be willing to build another hospital within the next five years, Robert Bormes sought advice from various medical practitioners who had established hospitals in adjoining states and he initiated a study of the feasibility of constructing an independent hospital in Aberdeen. The study included *258 an estimate of the capital needed and available sources of funds. On July 12, 1965, Robert Bormes and Dennis Maloney, as agents for Wylie Land, executed a contract to purchase from Aberdeen Realty Co. 259.675 acres of land (hereinafter referred to as the 260-acre tract) located northwest of Aberdeen, South Dakota. The 260-acre tract was bounded by Fairgrounds Road on the north, Country Club Road on the west, and Old Highway 281 on the east. The tract was intersected by U.S. Highway 281 running north and south through the tract; it lay north of the Lee Park Public Golf Course and the Aberdeen Country Club and it lay south of Wylie Lake, a 40-acre park, zoo and recreational area for the community. The sketch which follows depicts Section 11, Township 123 North, Range 64 West. The entire area cross-hatched is the tract acquired by Wylie Land. Wylie Land paid Aberdeen Realty Co. $62,775.62 for the purchase of the property, which represented a cost of approximately $242 per acre. A warranty deed transferring the property was executed on December 27, 1965. On October 19, 1965, the Doctor's Hospital and Diagnostic and Treatment Center (whose name was changed to Dakota Midland *259 Hospital in 1966 and will hereinafter be referred to as the Hospital) was incorporated as a nonprofit corporation under the laws of South Dakota. The trustees of the Hospital were Robert E. Bormes, Roger A. Standard, and Dennis Maloney, who were elected as president, vice president, and secretary, respectively. At the first meeting of the board of trustees on October 21, 1965, Robert Bormes offered the Hospital a 20-acre portion of the 260-acre tract which had been purchased by Wylie Land and informed the board that Wylie Land had offered to act as an agent in developing the feasibility of the Hospital and had agreed to handle all of the Hospital's finances and disbursements through its checking account at the First National Bank of Aberdeen. The trustees unanimously accepted such offers. On November 26, 1965, the Hospital filed an application for exemption from Federal income taxation under the provisions of section 501(c) (3) of the Internal Revenue Code of 1954[2] with the Internal Revenue Service, and the Hospital was granted such exemption in a determination letter dated December 17, 1965. On September 29, 1965, it was announced on the front page *260 of the Sunday edition of the Aberdeen American News that the hospital would be built in the community. On October 21, 1965, the Hospital executed a contract for architectural services to construct a hospital with the architectural firm of Stageberg and Associates. The architect recommended the most ideal site for the 20-acre hospital tract and arranged for the soil to be tested on the proposed site. On December 30, 1965, the partners of Wylie Land, their respective spouses, Robert Bormes and Dennis Maloney as agents for the partnership executed a partnership and agency agreement for the purpose of mutual investment in and development and promotion of real and personal property. The agreement covered the 260-acre tract acquired by the partnership. Each partner had an undivided 1/7 interest. Robert Bormes and Dennis Maloney were authorized as agents to borrow money, execute promissory notes, negotiate contracts affecting the 260 acres, and to perform "all things incidental to, necessary and required for the orderly promotion, expansion, and development *261 [sic] of the partnership property." All property acquired by the partnership was to be taken in the name of Wylie Land. Wylie Land contributed 8.5 acres of the tract to the Hospital on December 31, 1965. Such parcel of land (designated by the letter "A" on the sketch shown above) was 500 feet by 750 feet and was bounded by the Wylie Land acreage on three sides with the exception of 200 feet of a 10-acre parcel which was sold by Aberdeen Realty to Robert T. Leisen and Raymond M. Schutz on the following day. That parcel is designated by the number "13" on the sketch. On the south, the parcel was bounded by a tract of land owned by Town and Country Sports. There was no access to the parcel from the nearest road, which was Highway 281. The 8.5 acres were selected by the engineers working on the project and represented an arbitrary portion of the 20.5 acres destined to be deeded to the Hospital by the partnership. The intent of the partners in Wylie Land was to contribute 20.5 acres of the 260 acres to the Hospital in approximately equal portions over two taxable years. On January 11, 1966, Robert Bormes was informed by the securities firm of B.C. Ziegler and Co. (Ziegler) of *262 Minneapolis, Minnesota, that a mortgage loan of $1 million payable over a 20-year period, representing 45 percent of the value of the Hospital's land and improvements, would be provided if the Hospital's additional financing were acceptable. In February 1966, the Cosgriff Organization of Omaha, Nebraska, a professional fund-raising consulting firm, was engaged by the Hospital's trustees to make a feasibility study for a fund-raising drive in the community for the construction of the new hospital. In March 1966, a fund-raising campaign under the direction of the Cosgriff Organization was authorized by the board of trustees. Prior to the completion in August 1966 of architectural plans required for bidding purposes, the trustees let a contract for earth moving in the amount of $15,000 so that the construction of the hospital would not be delayed. On August 30, 1966, Wylie Land contributed a second parcel of land (indicated as parcel B on the sketch) to the Hospital containing approximately 12 acres lying adjacent to and immediately west of parcel A and abutting Highway 281 along its entire width of 750 feet. At the same time, Wylie Land made a cast contribution of $40,000 to *263 the Hospital. Bids were solicited for construction of the hospital in September 1966. The bids totaled $1,900,000. After a mortgage commitment was obtained from Northwestern National Life Ins. Co. for a first mortgage loan of $1 million, half of which was required to be guaranteed by persons outside of Hospital, the bids were accepted by the trustees and contracts were executed. In order to secure the loan commitment, Wylie Land was required to guarantee that sewer and water facilities would be extended to the hospital site. It was, therefore, necessary for Wylie Land to extend sewer and water lines from the Aberdeen city limits at the eastern boundary of the 260-acre tract, abutting County Highway, for one mile in a westerly direction to Hospital site's eastern boundary. The new Hospital experienced severe financial problems in securing sufficient additional financing during its initial stages of construction since its costs had risen by another $1 million. In May 1967, construction ceased because of lack of funds. After three months of negotiations, funds were obtained from the First Dayton Corp. of Ohio (First Dayton) through a revenue bond issue and construction was resumed. *264 First Dayton required that the 12 key persons connected with the Hospital each be insured for $250,000. The life insurance premiums totaling $5,000 per month for 25 years, the life of the bond issue, were personally guaranteed by Robert Bormes. Wylie Land was incorporated on July 28, 1967, under the laws of the State of South Dakota and named Wypar, Inc. (Wypar). The 260-acre tract which it had acquired from Aberdeen Realty (except the parcels donated to the Hospital) was transferred to the new corporation. Robert Bormes owned a 25 percent stock interest in Wypar at all material times herein. The development of the plans for extending the sewer and water facilities to the hospital was done with Wypar. The sewer and water line contract for both the hospital and the Wypar acreage was let to a contractor in 1968. The cost of the project, which included other engineering and soil-testing costs, was $216,413.11. Of this amount, $45,000 represented expenses clearly attributable to on-site work performed for the Hospital, and $20,000 represented expenses incurred only for the benefit of Wypar. The Wypar shareholders found that it was not possible to completely separate the sewer *265 and water contract between the Hospital and Wypar due to the inherent difficulties of equating the immediate and long-range use of the sewer and water lines. As a result of the substantial criticism directed against the Hospital because of the community's misunderstanding of the relationship between Wypar and the Hospital, it was decided by Wypar that the balance of the sewer and water costs of $151,413.11 would be allocated in the amount of two-thirds ($101,928.79) to Wypar and one-third ($49,484.32) to Hospital. All future sewer and water costs were to be divided between the Hospital and Wypar in the same proportion. Berkshire Investment Co. (Berkshire), of which Robert Bormes was a shareholder, pledge $10,000 to the hospital and Robert Bormes individually pledged $67,071.21 to guarantee the installation of the sewer and water facilities. As the sewer and water costs were paid, credits were made against the pledges. The costs of extending the sewer and water lines from the city limits to the eastern boundary of the hospital were to be borne ratably by the lots in Wylie Park Estates, the residential real estate project developed on the remaining Wylie Land acreage by Berkshire. *266 Berkshire was incorporated under the laws of South Dakota on January 13, 1971, and Wypar was merged into Berkshire on July 7, 1971. The hospital opened and admitted its first patient in July 1969. In 1970 or 1971, a South Dakota real estate appraiser, Bill Hobson, contacted Petitioner Dennis Maloney while appraising a tract north of the hospital parcels on Highway 281. He obtained information from Maloney about sales of land made in the area and also agreed to provide Maloney with a valuation of the hospital land. Hobson reported to Maloney that, in his opinion, the land was worth approximately $2,100 per acre at that time. Wylie Land, on its U.S. Partnership Return of Income for the taxable year 1965, reported the gift of 8.5 acres of land to the Hospital on December 31, 1965, at a value of $5,882.31 per acre. All petitioners deducted their distributive shares of such charitable contribution on their income tax returns for the taxable year 1965. Wylie land filed an amended partnership return for the taxable year 1965 as did Petitioners Robert E. and Patricia A. Bormes in which they claimed that the land contributed to the hospital on December 31, 1965, had a value of *267 $11,764.70 per acre. Wylie land, on its partnership return for the taxable year 1966, reported the gift of 12 acres of land to the hospital on August 30, 1966, at a value of $4,333.33 per acre. All petitioners deducted their distributive shares of the charitable contribution at such value on their income tax returns for the taxable year 1966. Wylie Land filed an amended partnership return for the taxable year 1966 as did Robert E. and Particia A. Bormes in which they claimed the land contributed to the hospital on August 30, 1966, had a value of $8,333.33 per acre. The Commissioner, in his statutory notices of deficiency, determined that the land contributed on December 31, 1965, had a value of $800 per acre on that date and the land contributed on August 31, 1966, had a value of $1,000 on that date. At trial, the Court granted petitioners leave to file amendments to their petitions and they filed such amendments claiming the following values per acre for the gifts made by Wylie Land in the respective taxable years: Docket No.
1965
1966 Robert E. and Patricia A. Bormes
7304-70
$ 6,000
$10,000
William A. and Karol J. Bormes
7305-70
12,000
20,000
Dennis and Carole C. Maloney
7306-70
12,000
20,000
Bernard C. and Marcella A. Gerber
7307-70
6,000
10,000
Richard L. and Janet K. Kolker
7308-70
6,000
10,000
*268 The following table reflects sales of real estate in the vicinity of Aberdeen, South Dakota, and tracts sold in the section of land containing the parcels contributed to the hospital are indicated in the sketch in our findings by the corresponding numbers of the table: No.
Site
Date
Acreage
Price Per Acres 1
Professional Arts Bldg.
1961
4.56
$ 5,263
2
Aberdeen Realty Co. to Leisen
7/2/62
1.83
800
3
Americana Nursing Home
10/4/63
4.39
7,400
4
Northern State College Dormitory
4/22/63
9.40
7,440
5
McIntyre to Close
10/3/63
10.00
600
6
Employment Security Bldg.
1964
3.00
15,700
7
Holiday Inn
Aug. 1964
9.00
5,522
8
McIntyre to Park Grant Co.
5/5/64
10.00
850
9
Schumacker to Sunset Memorial Gardens
11/12/64
12.00
750
10
Aberdeen Realty Co. to Hunt
12/27/65
10.00
800
11
Aberdeen Realty Co. to Wylie Land
12/27/65
259.675
242
12
Aberdeen Realty Co. to Anderson
1/1/66
130.00
800
13
Aberdeen Realty Co. to Leisen and Schutz
1/1/66
10.00
800
14
Lowe to Wylie Land
Jan. 1966
70.00
1,000
15
Mel-Ros Development Co. to Bethesda Nursing Home
Jan. 1966
20.00
1,000
ULTIMATE FINDINGS The fair *269 market value of 8.5 acres of land contributed by petitioners' partnership to the hospital on December 31, 1965, was $800 per acre and the fair market value of 12 acres of land contributed by petitioners' partnership to the hospital on August 30, 1966, was $1,000 per acre. OPINION The sole issue presented for decision is the valuation of parcels of land contributed by petitioners' partnership to a hospital on December 31, 1965 and August 30, 1966. The parcels were a part of 259.675-acre tract purchased by petitioners' partnership on July 12, 1965.The entire tract was undeveloped acreage adjoining the City of Aberdeen, South Dakota, on one corner where sewer and water lines ended. The parcels contributed to the hospital were located near the center of the tract and were remote from the sewer and water lines. The locations of highways and descriptions of adjoining properties are provided by a sketch contained in our findings of fact. The various per-acre values of the parcels contributed are as follows: 8.5-Acre Parcel Contributed on December 31, 1965 Value claimed on original information return of partnership and income tax returns of all petitioners and in original petitions
$ 5,882.31
Value claimed on amended information return of partnership and amended income tax return of Petitioners Robert E. and Patricia A. Bormes
11,764.70
Value claimed in amended petitions of Robert E. and Patricia A. Bormes, Bernard C. and Marcella A. Gerber, and Richard L. and Janet K. Kolker
6,000.00
Value claimed in amended petitions of William A. and Karol J. Bormes and Dennis and Carole C. Maloney
12,000.00
Opinion of value of petitioners' expert witness
6,000.00
Value determined by the Commissioner in his statutory notice of deficiency
800.00
Opinion of value of respondent's expert witness
800.00 12-Acre Parcel Contributed on August 30, 1966 Value claimed on original information return of partnership and income tax returns of all petitioners and in original petitions
$ 4,333.33
Value claimed on amended information return of partnership and amended income tax return of Petitioners Robert E. and Patricia A. Bormes
8,333.33
Value claimed in amended petitions of all petitioners except Dennis and Carole C. Maloney and William A. and Karol J. Bormes
$10,000.00
Value claimed in amended petitions of Petitioners Dennis and Carole C. Maloney and William A. and Karol J. Bormes
20,000.00
Opinion of value of petitioners' expert witness
10,000.00
Value determined by the Commissioner in his statutory notices of deficiency
1,000.00
Opinion of value of respondent's expert witness
1,000.00
*270 The parties and their expert witnesses agree that the definition of fair market value contained in the income tax regulations applies here. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * [Sec. 1.170-1(c) (1), Income Tax Regs.] Petitioners offered the testimony of one expert witness as did respondent. Both of the experts were qualified and although the qualifications of petitioners' expert were somewhat more impressive, they were offset by the fact that respondent's expert was a native of Aberdeen and was more familiar with sales of real estate in Aberdeen and the trends of such sales. The expert witnesses both based their opinions on comparable sales of real estate. In making comparisons, it was necessary for them to consider the highest and best use of the parcels contributed to the hospital. *271 The expert witnesses disagreed on this point. It was the opinion of petitioners' expert that the highest and best use was for a hospital. Respondent's expert's opinion was based on residential use for parcel A and commercial use for parcel B. We believe respondent's expert's opinion on highest and best use is more appropriate. There was no showing that land acquired for hospital use would command a higher price than land acquired for commercial or residential development. Moreover, parcel B was bounded on the west by Highway 281 which would enhance it value for commercial use. The expert witnesses also disagreed on the effect of water and sewer lines in the area of parcels A and B and of annexation to the City of Aberdeen. The opinion of petitioners' expert was based upon the extension of water and sewer lines to parcels A and B and annexation to the City of Aberdeen, but respondent's expert based his opinion on the fact that water and sewer lines were not available at the property lines of either parcel A or parcel B. We conclude that respondent's expert's opinion is more realistic on this point. The guarantees made by Wylie Land to extend the water and sewer lines were *272 made in September 1966, after the valuation dates with which we are concerned. Assumption of annexation to the City of Aberdeen by petitioners' expert was based upon the use of parcels A and B as a hospital which South Dakota law provides.On the dates of the gifts, however, there was little certainty of the construction and completion of the hospital. Indeed, in May 1967 construction ceased for several months due to lack of funds. The following table reflects the comparable sales relied upon by the expert witnesses together with the subject gifts indicated. The numbers in brackets following descriptions of the sales refer to identifying numbers on the sketch of the section of land in our findings of fact: Site
Date
Acreage
Price Per Acre
Expert Witness Professional Arts Bldg.
1961
4.56
$ 5,263
Pet.
Aberdeen Realty Co. to Leisen [2]
7/2/62
1.83
800
Resp.
Americana Nursing Home
10/4/63
4.39
7,400
Pet.
Northern State College Dormitory
4/22/63
9.40
7,440
Pet.
McIntyre to Close
10/3/63
10.00
600
Resp.
Employment Security Bldg.
1964
3.00
15,700
Pet.
Holiday Inn
Aug. 1964
9.00
5,522
Pet.
McIntyre to Park Grant Co.
5/5/64
10.00
850
Resp.
Schumacker to Sunset Memorial Gardens
11/12/64
12.00
750
Resp.
Aberdeen Realty to Hunt [10]
12/27/65
10.00
800
Resp.
Aberdeen Realty to Wylie Land [11]
12/27/65
259.675
242
Resp.
Gift to hospital by Wylie Land
12/31/65
8.5
Aberdeen Realty to Anderson
1/1/66
130.00
800
Resp.
Aberdeen Realty to Leisen and Shutz [13]
1/1/66
10.00
800
Resp.
Lowe to Wylie Land [14]
Jan. 1966
70.00
1,000
Resp.
Mel-Ros Development Co. to Bethesda Nursing Home
Jan. 1966
20.00
1,000
Resp.
Gift to hospital by Wylie Land
8/30/66
12.00
*273 It is apparent from the foregoing table that respondent's expert witness relied upon sales closer in point of time to the dates of the gifts and principally sales of real estate located either adjacent to the land donated to the hospital or in the same section. We have carefully considered the appraisal reports and the testimony of the expert witnesses in which they detail their findings of the comparability of sales. After weighing all of the evidence, we are not convinced that parcels A and B had fair market values on the dates of the gifts in excess of the values determined by the Commissioner in his statutory notices of deficiency. We have, therefore, found that the fair market value of the 8.5 acres contributed on December 31, 1965, was $800 per acre and the fair market value of the 12 acres contributed on August 30, 1966, was $1,000 per acre. Because of concessions made by respondent in some of the cases, Decision will be entered for respondent in docket No. 7308-70 and decisions will be entered under Rule 155 in docket Nos. 7304-70, 7305-70, 7306-70 and 7307-70. Footnotes
1. Cases of the following petitioners are consolidated herewith: William A. Bormes and Karol J. Bormes, docket No. 7305-70; Dennis Maloney and Carole C. Maloney, docket No. 7306-70; Bernard C. Gerber and Marcella A. Gerber, docket No. 7307-70; and Richard L. Kolker and Janet K. Kolker, docket No. 7308-70. ↩
2. All statutory references are to the provisions of the Internal Revenue Code of 1954 in effect during the years in issue. ↩